616 N.W.2d 162 (2000)
Patrick J. BUCHANAN, Ezola Foster and Mark A. Forton, Plaintiffs-Appellants,
v.
SECRETARY OF STATE, Director of Elections, Diane Mckelvy and Eleanor Renfrew, Defendants-Appellees.
Docket No. 117649, COA No. 229520.
Supreme Court of Michigan.
September 15, 2000.
On order of the Court, the motions for immediate consideration are considered, and they are GRANTED.
The application for leave to appeal from the September 11, 2000 order of the Court of Appeals is also considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The plaintiffs have not established that they are entitled to the issuance of a writ of mandamus. The motion for leave to appear as amicus curiae in support of the application for leave to appeal is also considered, and it is GRANTED.
MARKMAN, J., concurs and states as follows:
Although I concur in the decision of this Court to deny leave to appeal, I believe it to be a truly unfortunate occurrence that the people of the state of Michigan have been denied the opportunity to cast their votes for the presidential and vice-presidential candidates of a legitimate third party in the November 2000 general election. However, the circumstances of the present appeal, in my judgment, compel the result reached by this Court today. The issue whether the circuit court and the Court of Appeals both erred in denying plaintiffs' request for a writ of mandamus, seeking to require the Secretary of State to recognize Patrick Buchanan and Ezola Foster as the candidates of the Reform Party in Michigan, comes before us at the twenty-fifth hour. I am persuaded by the arguments of the Attorney General that such issue must now be considered moot; candidate names for the November general election have already been certified to Michigan boards of county commissioners and ballots have circulated for candidate review; plaintiffs have offered no authority demonstrating that the Secretary of State may legally or practically intervene at this juncture.
Moreover, the vehicle chosen by plaintiffs, a complaint for writ of mandamus, is simply not the proper vehicle for the relief sought; a writ of mandamus will only be *163 issued if a plaintiff proves he has a "`clear legal right to performance of the specific duty sought to be compelled'" and that the defendant, i.e., the Secretary of State, has a "`clear legal duty to perform such act....'" In re MCI Telecommunications Complaint, 460 Mich. 396, 442-443, 596 N.W.2d 164 (1999).[1] We review, as does the Court of Appeals, a circuit court's decision regarding the issuance of a writ of mandamus for abuse of discretion. Id. at 443, 596 N.W.2d 164. The record in the present case demonstrates that plaintiffs had no "clear legal right" to be established as the Michigan Reform Party candidates. A plethora of conflicting evidence existed regarding who should be certified as the "official" Michigan Reform Party candidates and, following an extensive investigation by the Director of Elections, Christopher Thomas, the Secretary of State concluded that a determination could not be made consistent with Michigan law.[2] After reviewing the facts as best as could be done under these emergency circumstances, it can hardly be concluded that the Secretary of State erred in fulfilling a clear statutory obligation[3] or that the circuit court abused its discretion in reviewing her performance and denying plaintiffs' complaint. While plaintiffs may conceivably have prevailed had they brought their complaint earlier (allowing the executive and judicial branches to work through the applicable statutes and by-laws to determine which of the competing factions runs the Michigan party) and in the form of a declaratory judgment action, we are constrained by the law as it pertains to writs of mandamus and must deny relief.
The dissent asserts that this Court is denying leave for the "hollow reason" that these plaintiffs have incorrectly labelled the remedy that they seek. However, the plaintiffs, who are sophisticated parties, have chosen to proceed by way of a complaint for mandamus, in lieu of a declaratory judgment action, in part perhaps of the time constraints which they faced. In so doing, they have not developed the sort of evidentiary record that might have enabled the lower courts to effectively address the question of who are the proper candidates of the Michigan Reform Party.
I do agree, however, with Court of Appeals Judge Cavanagh that the views expressed *164 by Justice LEVIN in his dissent in American Independent Party v. Secretary of State, 397 Mich. 689, 247 N.W.2d 17 (1976), are not without merit. Specifically, I concur with Justice LEVIN's assertion that claims concerning a party's right of access to the ballot are justiciable under the proper circumstances, for
[u]nless the judiciary provides a meaningful remedy, a minority faction, without regard to the legitimacy of its claims, could, by merely asserting them, preclude a qualified party, its candidates, and electors desiring to vote for them from access to the ballot.

* * *
Where more that one slate purporting to be the "regular" slate is presented to the election officials and the issue cannot be resolved through the internal processes of the party, [a judicial] accommodation is required of the competing values (keeping the courts out of the "political thicket" and preserving access to the ballot) which does not entirely subvert the electoral opportunity of rightful candidates and of electors desiring to vote for them. [Id. at 703, 705-706, 247 N.W.2d 17.]
Under different circumstances, I believe that this Court might have a legitimate role to play in resolving this controversy. However, in my judgment, the election process must go forward and the time has passed for the Michigan Reform Party to bring its own house into order. I am not prepared to distort the legal processes of our state by compelling the Secretary of State to recognize one of two slates of candidates in the face of this confusion. Unfortunately, it is the voters of this state who will ultimately suffer as a result of the Michigan Reform Party's inability to resolve its internal conflicts. Nevertheless, I cannot conclude that the Director of Elections, the Secretary of State, the circuit court, the Court of Appeals, and the Attorney General have all mishandled this case.
MICHAEL F. CAVANAGH, J., dissents and states as follows:
I dissent from the denial of leave to appeal.[1] Because of the Reform Party's electoral success in prior elections, it is entitled to have its candidates for the offices of President of the United States and Vice-President of the United States listed on the general election ballot. By denying leave for the hollow reason that these plaintiffs have incorrectly labeled the remedy they seek, this Court ensures that the Reform Party will not have candidates for these offices listed.
Under Michigan law, political parties polling less than five percent must nominate their candidates at party conventions or caucuses. MCL 168.686a; MSA 6.1686(1). Thus, plaintiffs had to be nominated at a convention or caucus. In the instant case, the party convention split into two groups favoring different nominees, and because there was no opportunity for intra-party resolution of the split, each group attempted to certify its preferred candidate, as required by M.C.L. § 168.686; MSA 6.1686. The Court's majority declines to even entertain plaintiffs' claims for certification, but I agree with the thoughts of Justice LEVIN, similarly given in dissent when last this Court, based on a split convention, denied any ballot access to small-party candidates:
Absent a legislative solution or an opportunity for resolution of disputes concerning candidates through a party's internal processes, candidates and electors properly look to the judicial branch of *165 government to protect the electoral rights secured by constitution and statute. Unless the judiciary provides a meaningful remedy, a minority faction, without regard to the legitimacy of its claims, could, by merely asserting them, preclude a qualified party, its candidates, and electors desiring to vote for them from access to the ballot. [American Independent Party v. Secretary of State, 397 Mich. 689, 703, 247 N.W.2d 17 (1976) (LEVIN, J., dissenting).]
Generally, courts will not resolve disputes arising at political party conventions when the conventions can resolve the disputes themselves. See, e.g., O'Brien v. Brown, 409 U.S. 1, 5, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972). As Justice LEVIN explained previously, however
[t]he principle of those cases does not control where it is not possible to obtain resolution internally because the dispute arises at the highest state level of the party, resolution at a national level of the party is not available, and the consequence of failing to provide judicial relief is to deny access to the ballot. [American Independent Party, supra at 705, 247 N.W.2d 17 (LEVIN, J., dissenting).]
Further, "[i]n cases of factional party fights it is sometimes necessary for the courts to pass upon the regularity of nominations in order that a ticket may be made up...." 29 CJS, Elections, § 88, p. 218.
In the instant case, plaintiffs request mandamus ordering the Secretary of State to place them on the ballot in the column of candidates to which the Reform Party is entitled. Mandamus may lie when the defendant has a clear legal duty to perform the act sought to be compelled. Teasel v. Dep't of Mental Health, 419 Mich. 390, 409-410, 355 N.W.2d 75 (1984). Here, the Secretary of State has a statutory duty to accept certifications. Although there were two competing certifications, mandamus may lie to compel the exercise of discretion. Id. at 410, 355 N.W.2d 75. In cases such as this, compelling discretion to certify some candidate is viable because, as Justice LEVIN explained, objective criteria can be used to determine which group was rightfully in control of the party. The criteria include the statutory requirements found in the Michigan Election Law, M.C.L. § 168.1 et seq.; MSA 6.1 et seq., as well as party by-laws and internal procedures, whether a convention was held at the regular time and place, whether the leadership at a convention was regularly chosen, and whether a majority of the party remained at a regularly called convention. American Independent Party, supra at 706-707, 247 N.W.2d 17 (LEVIN, J., dissenting). By using these objective criteria, the Secretary of State could avoid "issues of ideological heirship and subjective notions of which group ought to be recognized, [to] determine the group rightfully in control of the party." Id. at 707, 247 N.W.2d 17.
By denying leave to appeal, this Court leaves both groups claiming the Reform Party's mantle without a remedy. In the instant case, each group has a colorable claim that it is the rightful standard bearer.[2] Simply disposing of this case without even considering the parties' arguments will ensure that the Reform Party, its rightful nominees, and the electors desiring to vote for them have no recourse at *166 all, and will allow an arm of government, rather than voters, to determine the people and ideas that will guide our country. I, therefore, would grant leave to appeal.[3]
MARILYN J. KELLY, J., joins in the dissent of MICHAEL F. CAVANAGH, J.
NOTES
[1] Although the dissent correctly asserts that "mandamus may lie to compel the exercise of discretion," citing Teasel v. Dep't of Mental Health, 419 Mich. 390, 410, 355 N.W.2d 75 (1984), it fails to recognize that mandamus may not lie to compel the exercise of discretion in a particular manner. Id. at 409-410, 355 N.W.2d 75. In the present case, the Secretary of State has exercised her discretion in making the determination that, because of the utterly chaotic circumstances that exist within the Michigan Reform Party, it could not be definitively concluded that Patrick Buchanan and Ezola Foster have been endorsed through the legally recognized procedures established in Michigan law. That plaintiffs are dissatisfied with the result of the Secretary of State's exercise of discretion does not support their complaint for writ of mandamus in this case.
[2] MCL 168.686; MSA 6.1686 requires that the chairperson and secretary of a political party's state central committee certify to the Secretary of State a list of all candidates nominated at the party's state convention. In the present case, not only is it unclear who are the proper candidates of the Michigan Reform Party, but it is equally unclear who are the proper certifying officers for the Michigan Reform Party. This latter confusion, as well as the specific requirements of Michigan law, render of relatively little value the judicial determinations made by other states in regard to the present controversy.
[3] The dissent asserts that "here, the Secretary of State has a statutory duty to accept certifications." Does this duty, as contemplated by the dissent, compel the Secretary, under every set of circumstances, to certify a party's candidates regardless of the process by which they are selected, regardless of which persons purport to certify the candidates, and regardless of how many candidates are certified for a given political office? One might logically conclude, for example, that where, as here, two candidates have been "certified" for a single position that one of these certifications might be defective in some regard. Does the Secretary of State truly have a "duty" to certify both candidates? Cf. American Independent Party v. Secretary of State, 397 Mich. 689, 247 N.W.2d 17 (1976).
[1] This statement of dissent was prepared in response to the order simply denying leave for the reason that "plaintiffs have not established that they are entitled to the issuance of a writ of mandamus." It, thus, does not directly address any additional rationale subsequently proffered by the concurrence.
[2] For example, the plaintiffs assert that the state party must recognize the recognized national candidates, and note that they are the national candidates, as acknowledged by the Federal Elections Commission when it awarded their group $12.6 million in federal election funds. See Kim, FEC gives final OK to releasing $12.6 million to Buchanan, Associated Press Newswires, September 14, 2000. On the other hand, although it did not order mandamus, the trial court believed the defendant group's claims of legitimacy were "much stronger."
[3] While defendants assert the lateness of this matter renders it moot, the Court could benefit from argument on just what steps are possible to be taken by the Secretary of State to implement whatever relief may be determined appropriate.