SOUTAR *v.* ST. CLAIR COUNTY ELECTION COMMISSION.

1. JUDGES—PROBATE JUDGES—NOMINATION PETITIONS—FEES.

Printing of name of a candidate for the office of probate judge on a ballot may not be obtained without filing petitions therefor with the required number of signatures and in the form, as specified, prescribed by the secretary of State, no provision being made for payment of a fee in lieu of filing the required nomination petitions for such office (Const 1908, art 7, § 23, as amended in 1947).

2. SAME—STATUTES—FEE IN LIEU OF NOMINATING PETITIONS—PROBATE JUDGES.

The statutory provision permitting a candidate of a political party to pay a fee in lieu of filing nomination petitions is not available for use with respect to the nonpartisan office of probate judge (Const 1908, art 7, § 23, as amended in 1947; CL 1948, § 157.3).

3. SAME—NAMES ON BALLOT—CONSTITUTIONAL LAW—AFFIDAVIT OF IDENTIFICATION.

The Constitution, insofar as it sets forth the steps required to obtain the printing on ballot of the name of a candidate for nomination for a judicial office, is self-executing and other obligations may not be imposed; hence a candidate for such an office need not file an affidavit of identification (Const 1908, art 7, § 23, as amended in 1947; CL 1948, § 157.22).

4. SAME—CERTIFICATION OF NAME TO ELECTION COMMISSION—AFFIDAVIT OF IDENTIFICATION.

The right of an unopposed candidate for judicial office to have his name certified to the board of election commissioners arises immediately following expiration of the time set for filing nominating petitions and is not conditioned or contingent on the filing of the statutory affidavit of identification in ensuing 3-day period (Const 1908, art 7, § 23; CL 1948, § 157.22).

5. SAME—EXECUTIVE CONSTRUCTION OF STATUTES—AMENDMENT OF CONSTITUTION.

Executive construction of statutes relating to time for filing nominating petitions in effect at time amendment to Consti-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 18 Am Jur, Elections § 174 *et seq.*
[2, 5–10] 18 Am Jur, Elections § 118 *et seq.*
[2, 5–10] Constitutionality of election laws as regards nominations by petition. 146 ALR 668.
[11] 14 Am Jur, Costs § 91.

tution was adopted relating to nomination and election of judges must be given due consideration (Const 1908, art 7, § 23).

6. SAME—PROBATE JUDGES—TIME OF FILING NOMINATING PETITIONS.

Nominating petitions for office of probate judge, filed on July 1, 1952, were timely filed, where primary election was set for August 5, 1952, the filing having taken place on the 35th day preceding the primary (Const 1908, art 7, § 23, as amended in 1947).

7. SAME—PROBATE JUDGES—TIME OF FILING NOMINATING PETITIONS—HOUR OF DAY.

Statutory provision restricting officers who are authorized to receive nominating petitions from accepting petitions after 4 o'clock on the last day of acceptance does not concern the holding or conducting of an election, hence does not apply to petitions for office of probate judge (Const 1908, art 7, § 23, as amended in 1947; CL 1948, § 157.14, as amended by PA 1952, No 171).

8. MANDAMUS—FILING OF NOMINATING PETITIONS—COUNTY CLERK.

Mandamus may not be granted to compel a county clerk to accept nominating petitions for the office of probate judge unless it was the clear legal duty of the clerk to receive the petitions.

9. JUDGES—PROBATE JUDGES—NOMINATING PETITIONS—ACCEPTANCE BY COUNTY CLERK—TIME.

Defendant county clerk should have received plaintiff's nominating petitions for filing, subsequent examination and checking, that were presented at 4:55 p.m. on 35th day preceding date set for primary election, where, although office door was locked, tendered petitions were rejected because of mistaken application of an inapplicable statute and office was subsequently opened that day for transaction of other business (Const 1908, art 7, § 23, as amended in 1947; CL 1948, § 157.14, as amended by PA 1952, No 171).

10. SAME—PROBATE JUDGES—NOMINATING PETITIONS—NAME ON BALLOT.

Nominating petitions for office of probate judge, timely presented by plaintiff to defendant county clerk, are ordered received for examination and checking and, if found sufficient and in proper form, his name is ordered printed on the ballot, following certification by the defendant county clerk to defendant county election commission (Const 1908, art 7, § 23, as amended in 1947).

11. Costs—Public Question—Primary Election Ballot—Probate Judges.

> No costs are allowed in mandamus proceeding by incumbent probate judge to compel defendant county clerk to accept nominating petitions for his office and to compel the county election commission to cause his name to be printed on the ballot following certification, a matter of public concern being involved.

Mandamus by Robert M. Soutar against St. Clair County Election Commission and others to require placing of petitioner's name on nonpartisan ballot for office of probate judge. Submitted July 22, 1952. (Calendar No. 45,589.) Writ granted conditionally July 23, 1952.

*C. J. Sullivan* and *Howard J. Clyne,* for plaintiff.

*Delmar L. Cleland,* for defendants.

Carr, J. Pursuant to legislative action a general primary election for the nomination of candidates for various State and county offices will be held on August 5, 1952. The plaintiff is at the present time the judge of probate of St. Clair county, having been appointed to fill a vacancy in said office until the next general election. It is his claim that he has complied with the provisions of law relating to the filing of nomination petitions, and that he is entitled to have his name printed on the nonpartisan ballot used at such election as a candidate for nomination for said office to fill the unexpired term and also as a candidate for nomination for the full term beginning January 1, 1953. The defendant commission has denied his request that his name be so printed, and he has instituted this proceeding for the purpose of compelling said defendant to take such action.

The case has been submitted on plaintiff's petition, the answer thereto, the briefs of counsel for the respective parties, and an agreed statement relating to

certain of the facts in the case. During the afternoon of July 1, 1952, plaintiff had some conversation with the county clerk with reference to filing nomination petitions. It is conceded that at that time plaintiff did not have sufficient signatures but he indicated that he expected to have such before 4 o'clock. At that time he paid to the clerk the sum of $200 in the belief that such payment would obviate the necessity for filing petitions for nomination as a candidate for the offices sought by him.

At approximately 4:55 in the afternoon of July 1st, after the clerk had left his office and was proceeding down the stairs to a lower floor in the courthouse, he met plaintiff who stated that he had sufficient petitions with him to qualify him as a candidate for the nominations in question. The clerk stated in substance that the "deadline" had passed, and that he could not in consequence accept the petitions. The agreed statement of facts discloses that at the time the clerk believed that all nomination petitions were required to be filed before 4 o'clock. Although the clerk had apparently locked the door to his office, he reopened it for the accommodation of a third party who wished to correct a document, that had been filed, by inserting a date therein. Plaintiff, however, did not enter the office with the clerk, apparently regarding the statement of the latter as a definite refusal to accept the tendered petitions.

Subsequently further conversations were held between the parties concerned. During the afternoon of July 5th plaintiff re-tendered his petitions to the clerk, who declined to file them. The papers, including an affidavit made by plaintiff setting forth that he was the candidate referred to in his petitions, were left in the office of the county clerk and in his physical possession. Thereafter the names of other candidates for nomination to the office in question were certified to the election commission. The clerk

did not include therein the name of plaintiff, but in substance stated what had occurred with reference to plaintiff's attempts to qualify. Concluding that plaintiff was not entitled to have his name printed on the ballot, the commission accepted the certification as made.

The controversy involves the construction of article 7, § 23, of the State Constitution which was added by amendment adopted at the general election in April, 1939. Certain provisions were incorporated therein at the April election of 1947 with reference to certifying the name of a candidate for a judicial office whose petitions had been properly filed and who had no opposition therefor, a primary election as to such office being, in that event, rendered unnecessary. Also involved is the interpretation and application of certain provisions of the Michigan election law.[*]

: The section of the Constitution cited is declared therein to be self-executing. Its provisions material in the present case are as follows:

"Nomination petitions for candidates at any primary election hereunder, in form as designated by the secretary of State, shall be filed at least 35 days before such primary election. Nomination petitions for judge of the circuit court shall be filed with the secretary of State, and for all other judicial offices affected hereby with the county clerk. Petitions shall contain the signatures, addresses and dates of signing of a number of qualified voters equal to not less than 2 per cent, nor more than 4 per cent, of the total number of votes cast for secretary of State at the last preceding November election in the judicial district or county, as applicable.   *   *   *

---

[*] See CL 1948, § 145.1 et seq. (Stat Ann and Stat Ann 1951 Cum Supp § 6.1 et seq.). Amendments thereto, other than by PA 1952, No 171, effective April 24, 1952, which fixed the date of the primary election herein referred to, are not material to any issue in the instant case.

"If upon the expiration of the time for filing petitions for the primary election of said judicial officers, it shall appear that as to any such judicial office on any nonpartisan ticket there is no opposition, then the officer with whom such petitions are filed shall certify to the proper board of election commissioners the name of such candidate for said judicial office whose petitions have been properly filed, and such candidate shall be the nominee for such judicial office and shall be so certified. As to such judicial office there shall be no primary election and such judicial office shall be omitted from the judicial primary election ballot. The provisions of this paragraph shall likewise apply where more than 1 candidate is to be nominated for any judicial office and there are no more candidates than there are persons to be nominated."

The section also contains the following declaration:

"Except as in the Constitution otherwise provided, all primary election and election laws, including laws pertaining to partisan primaries and elections, shall, so far as applicable, govern primary elections and elections hereunder."

It will be noted that the language of the Constitution, above quoted, is silent with reference to the payment of a fee by a candidate in lieu of the filing of nomination petitions. In terms the printing of the name of a candidate on a ballot may be obtained by filing petitions therefor, with the required number of signers, and in the form, as specified, prescribed by the secretary of State. That the language of the Constitution is controlling is not open to question. The procedure there outlined is exclusive. Neither does it appear that the legislature has by statute attempted to grant to a candidate for nomination for a judicial office on a nonpartisan ballot the right to pay a fee in lieu of filing the required

nomination petitions. Presumably in making the payment above referred to plaintiff and the county clerk had in mind the provisions of CL 1948, § 157.3 (Stat Ann 1951 Cum Supp § 6.123). Said section, however, refers to printing the name of a candidate of any *political party* on the payment of the prescribed fee. The privilege granted, being restricted in the manner stated, was not in terms available to plaintiff. The payment made by him to the county clerk did not entitle him to have his name printed on the ballot as a candidate for nomination for the office of probate judge.

As before noted, plaintiff, at the time he left his nomination petitions in the office of the county clerk on July 5, 1952, left also an affidavit of identification, presumably tendered under CL 1948, § 157.22 (Stat Ann 1951 Cum Supp § 6.141[1]). Said section in terms requires that any candidate filing petitions in any primary election for any county, State, or national office must, within 3 days after the last day for such filing, file also with the county clerk or with the secretary of State 2 copies of an affidavit setting forth that he is the person filing petitions for such office, his address, whether qualified to vote at the primary election, number of years of residence in the State and/or county, and such other information as may be required to satisfy the officer with whom the affidavit is filed as to the candidate's identity. Apparently plaintiff relied on the county clerk to furnish him a suitable form of affidavit, and such was prepared, being executed, as stated, on July 5th. It was not accepted for filing at that time. The nomination petitions tendered by plaintiff having been rejected, it is apparent that under the language of the statute cited the affidavit could not have been properly filed, even had it been offered for that purpose within the period of 3 days following July 1st.

It will be noted that article 7, § 23, of the Constitution does not refer in any way to an affidavit of identification. Counsel for defendant stresses the provision, hereinbefore quoted, declaring that primary election and election laws shall, so far as applicable, govern primary elections and elections pursuant to the section of the Constitution in question. Obviously the reference is to pertinent provisions of statutes governing *elections*. The statutory provision requiring the identification affidavit does not relate in any way to the conduct of an election but, rather, in terms imposes an obligation on a candidate as a condition prerequisite to having his name printed on the ballot. It may not be assumed that in the framing and adoption of article 7, § 23, and the amendment thereto as ratified at the general election in April, 1947, it was intended that more should be required of a candidate for a nonpartisan judicial office than the filing of sufficient petitions in the prescribed form. Insofar as the steps required to obtain the printing of the name of a candidate for nomination for a judicial office on the nonpartisan primary ballot are concerned, the language of the Constitution is self-executing. Obligations other than those so imposed may not be added.

The situation here presented is wholly different in character from that involved in *Elliott* v. *Secretary of State,* 295 Mich 245. The statutory provision there in issue related to the conduct of the election, specifically the matter of rotation of names on the official ballot. As before noted, the so-called identification affidavit does not concern the calling, conducting, or regulating of elections, or the determination of the results thereof. See, also, *Attorney General, ex rel. Cook,* v. *O'Neill,* 280 Mich 649.

It may be noted further that the final paragraph of the section of the Constitution, above quoted in part, was added in 1947, after the enactment of the

statutory provision relating to the identification affidavit in PA 1941, No 348.* Under the specific language of the Constitution, if it appears on the expiration of the time for filing petitions that a candidate for nomination for a judicial office is without opposition at the primary his name shall be certified accordingly to the board of election commissioners. This is a right that arises immediately following the expiration of the time set for filing nomination petitions. It is not conditioned or contingent on the filing of the statutory affidavit within the ensuing period of 3 days. We conclude that plaintiff herein was not required to file such affidavit.

Article 7, § 23, of the Constitution requires that nomination petitions thereunder shall be filed at least 35 days before the primary election. Counsel for defendant contends in the instant case that this means that a period of 35 days shall intervene between the last day for filing petitions and the day on which the primary is held. Such a method of computation would lead to the conclusion that the petitions should have been filed on June 30th and not thereafter. This argument is at variance with the executive construction that has been placed on the specific language in question. Under date of July 21, 1948, the then attorney general of the State rendered an opinion, in response to a request from the secretary of State, to the effect that petitions for the nomination of candidates for judicial offices subject to the provisions of article 7, § 23, of the Constitution, may be filed on or before the 35th day preceding the primary election. In reaching such conclusion reliance was placed on the decisions of this Court in *Arnold* v. *Nye,* 23 Mich 286;

---

* This act added section 22 to chapter 3 of part 3 of PA 1925, No 351. It was amended by PA 1943, Nos 31, 86; PA 1945, No 90. It is CL 1948, § 157.22 (Stat Ann 1951 Cum Supp § 6.141[1]).— Reporter.

*People, for the use of Chaddock,* v. *Barry,* 93 Mich 542 (18 LRA 132) ; and *Ehinger* v. *Graham,* 190 Mich 132. Apparently such interpretation has been followed by public officials concerned with the administration of the election laws. In the case at bar it does not appear that the county clerk questioned at the time that plaintiff's petitions could be filed on July 1st provided that they were so filed before 4 o'clock in the afternoon.

In *Ranney* v. *Secretary of State,* 316 Mich 637, this Court accepted such an interpretation as correct, saying:

"The State Constitution (1908), art 7, § 23, requires the nominating petitions for candidates for the office of circuit judge to be filed with the defendant as secretary of State on or before January 13, 1947, that being 35 days before the third Monday in February, on which day the primary election is by law required to be held."

It appears that the third Monday in February, 1947, was February 17th. For obvious reasons the executive construction referred to must be given due consideration. The acceptance of the argument now advanced on behalf of defendant might well result in confusion and other consequences that should be avoided if possible. We adhere to the method of computation approved in the *Ranney Case.*

The opinion of the county clerk that he could not properly receive nomination petitions on July 1st after 4 o'clock, eastern standard time, was presumably based on the provisions of CL 1948, § 157.14, as amended by PA 1949, No 211, and PA 1952, No 171 (Stat Ann 1951 Cum Supp § 6.133, as amended by PA 1952, No 171), which specifically requires that the secretary of State, the various county clerks, and city clerks of cities in which officers are elected at the November election, shall receive nomination pe-

titions filed in accordance with the election law up to
4 o'clock in the afternoon of the 7th Tuesday preced-
ing the September primary. No reference is made
therein to petitions filed by persons seeking nomina-
tion as candidates for judicial offices, under article
7, § 23, of the Constitution. Such constitutional
provision does not fix a specific hour after which
nomination petitions may not be received on the
final day for filing. The limitation in this respect
as set forth in the statute does not concern the
holding or conducting of the election. It is not,
therefore, within the scope of the provision of the
Constitution, above quoted and discussed, with ref-
erence to statutes declared to govern elections there-
under insofar as applicable. It is unnecessary to
repeat what is said above as to the construction that
must be placed on the language of article 7, § 23, of
the Constitution. Without discussing the matter in
further detail, it is our conclusion that the provision
of the statute requiring that petitions shall be re-
ceived until 4 o'clock of the final day for filing has
no application in the instant case.

Assuming that the petitions tendered by plaintiff
for filing on July 1st were in proper form and were
signed by a sufficient number of qualified voters to
satisfy the requirement of the Constitution, he is
not entitled to the relief sought unless it was, under
all the circumstances, the clear legal duty of the
clerk to receive the petitions. On behalf of the de-
fendants it is contended that without reference to
the statutory 4 o'clock "deadline" on which the clerk
relied, plaintiff was required to present the nomina-
tion petitions during reasonable office hours and be-
fore the closing of the clerk's office at 4:45 p.m. The
argument is predicated on the claim that such clos-
ing hour was definitely fixed and, inferentially at
least, was observed by other county officers. Reli-
ance is placed on action by the county board of su-

pervisors taken at its January, 1949, session. A copy of the official proceedings of said board has been submitted with defendants' answer, from which it appears that the expenditures committee presented a report relating to county business. Among other matters contained therein was a recommendation that the hours of employees and of county offices should be from 8:30 a.m. to 4:45 p.m., with an hour at noon for lunch, and Saturday closing at 12:15 p.m. The form of the report indicates that the purpose of the recommendation was to fix the total hours per week for each employee at 40. It was adopted by the board. It further appears that the different county officers were advised of the action taken and requested by the chairman of the board of county auditors to comply therewith.

The record before us does not show affirmatively that following the action of the board of supervisors the various offices of the county were closed as contemplated by the report of the expenditures committee. Neither does it appear that the action of the board was intended to establish a definite rule that should remain in force and effect unless and until modified, or that it has been customarily observed, particularly by the county clerk, to and including the present time. It is significant in this regard that on the 1st of July, following his conversation with the plaintiff, the clerk returned to his office and reopened it for the purpose of assisting a person who wished a document previously filed to be corrected. It is also significant that the clerk, as the agreed statement of facts indicates, would have accepted plaintiff's petitions if he had considered that he had the legal right to do so. It is a fair conclusion that he did not think that in the conduct of his office he was required to close at 4:45 and transact no further business of a public nature.

It has been held that a public official is not subject

to a duty to keep his office open after regular and reasonable closing hours for the purpose of receiving nomination petitions. *State, ex rel. McQuesten,* v. *Hinkle,* 130 Wash 525 (228 P 299). It must be said, however, that there is no unanimity of decisions on the question. If in the instant case the county clerk had accepted the petitions tendered to him by plaintiff and had duly filed them, the weight of authority clearly supports the view that such action would have been legal and proper. *Cosgriff* v. *Board of Election Commissioners of the City and County of San Francisco,* 151 Cal 407 (91 P 98); *Grant* v. *Lansdon,* 15 Idaho 342 (97 P 960); *In re Norton,* 34 App Div 79 (53 NYS 1093). In 18 Am Jur, p 263, it is said:

"Nomination papers are on time if filed at any time up to midnight of the last day of the specified number, in the absence of any regulation to the contrary."

It may fairly be said that each decision dealing with the matter in issue has turned on the facts involved and the language of pertinent statutory or constitutional provisions. Assuming that the county clerk might properly have accepted the petitions from the plaintiff, the precise question for determination here is whether it was his clear legal duty to do so. Under the facts as disclosed by the record before us, we think that such question should be answered affirmatively. The clerk did not refuse to receive the petitions because the door to his office had been closed. It is apparent that he was ready and willing to reopen the office for the transaction of any business that he considered within the limits of his authority. The mistaken belief as to the application of the statutory 4 o'clock "deadline" should not be permitted to defeat plaintiff's right to file his petitions. It is our conclusion that the clerk

should have received them for filing and subsequent examination and checking.

The record in the case does not disclose affirmatively that the petitions tendered by plaintiff were in proper form or that they contained the required number of signatures of qualified voters. Unless they complied with the requirements of the Constitution in these respects, plaintiff is obviously not entitled to have his name printed as a candidate for nomination on the nonpartisan ballot to be used at the August 5th primary election. It appears that when the petitions were left with the clerk on July 5th they were placed in a suitable container which was sealed. Under the record here it cannot be said that they are, or are not, sufficient to entitle plaintiff to the relief sought.

An order will enter directing the defendants to receive, examine and check the petitions in question. If it is determined that they are sufficient as to signatures and are in proper form, the defendant election commission will cause the name of the plaintiff to be printed on the ballot, following certification by the county clerk. If the issue is not determined in plaintiff's favor, then the relief sought by him is denied. In the event that further action by this Court is found necessary, either party to the case may apply therefor. Inasmuch as the matters involved herein are of public concern, no costs are allowed.

DETHMERS, BUSHNELL, SHARPE, and REID, JJ., concurred.

BUTZEL and BOYLES, JJ., and the late Chief Justice NORTH did not sit.